**EWING & PHILLIPS HARDWARE CO. v. CAGE–SPARKS HARDWARE CO. et al. (No. 7806.)**

Court of Civil Appeals of Texas. San Antonio. June 29, 1927.

Rehearing Denied July 23, 1927.

1. **Chattel mortgages** ⬤➡229(3)—Mortgagee, suing for conversion of mortgaged cotton, had burden of proving want of consent to taking.

In suit by mortgagee to recover value of mortgaged cotton from creditor of mortgagor, which it was alleged creditor had converted, in which defendant filed general denial, burden was on plaintiff to show wrongful taking of cotton without consent of plaintiff.

2. **Chattel mortgages** ⬤➡229(2)—Under petition alleging conversion of mortgaged cotton and general denial by defendant, evidence of plaintiff's consent by delivery of proceeds of sale of cotton to defendant held competent.

Under petition alleging that defendant, creditor of mortgagor, converted to its own use cotton mortgaged to plaintiff, and general denial by defendant, it was competent to show consent as defense by evidence that mortgagee, through its agent, instructed mortgagor to sell cotton and deliver proceeds to defendant.

Appeal from Kleberg County Court; W. H. McCracken, Judge.

Suit by the Ewing & Phillips Hardware Company against the Cage-Sparks Hardware

Company and others. From the judgment, plaintiff appeals. Affirmed.

Jas. G. Cook, of Sinton, for appellant.

Gus L. Kowalski, of Kingsville, for appellees.

COBBS, J. This was a suit instituted by Ewing & Phillips Hardware Company, as plaintiff below, appellant here, a private corporation, of Sinton, Bishop, and Robstown, Tex., in the county court of Kleberg county, Tex., on September 24, 1926, against one W. M. Bolin, upon a promissory note, and to foreclose a chattel mortgage on some farming implements of said Bolin, of the value of $40. The note sued upon was originally for the principal sum of $392.09, executed to appellant by said Bolin, dated August 15, 1925, due August 15, 1926, with 10 per cent. interest from date; a credit of the sum of $41.39 being shown on note of date August 21, 1926. The mortgage sought to be foreclosed was executed by said W. M. Bolin to appellant August 15, 1925, to secure said note, and there was mortgaged the two pieces of machinery, and also the sixteenth, seventeenth, eighteenth, nineteenth, twentieth, and twenty-first bales of cotton for the crop year, 1926, raised by said Bolin, as a tenant, on the farm of O. J. Johnson in Kleberg county, Tex.

The firm of Cage-Sparks Hardware Company and the individuals composing said partnership were made parties defendant to appellant's said suit, upon the allegation that said named parties, appellees here, on or about the 20th of August, 1926, converted to their own use five bales of the six originally mortgaged to appellant by said W. M. Bolin—that is to say, the sixteenth, seventeenth, eighteenth, nineteenth, and twentieth of such bales so raised by Bolin on said Johnson farm in Kleberg county for 1926—and that the five bales of the converted cotton were of the value of 18 cents per pound, at the time and place of conversion, and that said bales were average 500-pound bales.

Appellant prayed judgment against W. M. Bolin, the mortgagor, for the amount of the balance due of its debt, principal, interest, and attorney's fees, and for a foreclosure of its said mortgage on the two harrows, and for judgment against Cage-Sparks Hardware Company, and the individuals composing such firm, to wit, D. G. Cage, L. A. and J. B. Cage, W. C. Sparks, and A. M. White, jointly and severally, for the said value of said five bales, amounting to $450, and with interest thereon from date of conversion.

The defendant W. M. Bolin, mortgagor, though duly cited, made default and failed to answer. The other defendants, said Cage-Sparks Hardware Company and the said members above named, appeared, and in answer to appellant's petition filed a general demurrer and a general denial thereto. The trial was had to the March term, 1927, of said county court, to the court, no jury being demanded in the case, and on March 24, 1927, the trial court rendered its verdict and decree as follows:

(1) In favor of appellant against the mortgagor, W. M. Bolin, for the amount of the balance due on its debt, principal, interest, and attorney's fees, aggregating the sum of $457.82, with interest thereon at the rate of 10 per cent. per annum, and for a foreclosure of appellant's lien, or mortgage, on the two harrows, valued at $40, and that an order of sale issue, etc.

(2) That appellant recover nothing of the remaining parties, Cage-Sparks Hardware Company and the partners sued individually, but that such latter parties, appellees, go hence without day, and recover of appellant their costs.

The court made special findings of fact, and in addition to these special findings, on a separate paper, made similar findings and conclusions of law, in support of its judgment. They are supported by the testimony. The suit seems predicated upon the theory that appellees unlawfully converted property upon which appellant had a prior lien, without the consent of appellant, and that was made the real issue in the case. Appellees contend the property or proceeds of the cotton were taken with the knowledge and consent of appellant, but, if not so taken, that it was not wrongful, but was taken by authority of "Mr. B. O. Williams, agent of Ewing & Phillips Hardware Company," who "said it would be all right for me to deliver to Cage-Sparks Hardware Company the proceeds of the sale of the cotton, pending settlement of their adverse claim, and they would thrash it out later." Bolin further testified:

"Mr. B. O. Williams, the agent of plaintiff, talked with Mr. J. H. Ewing over the phone, and he then told me to turn over the proceeds of the cotton to Cage, which I did."

He further testified, on cross-examination, as follows:

"I was told by Mr. Cage and Mr. Williams, both, to sell the cotton to the highest bidder, and I saw all the cotton buyers in Kingsville before I sold to Cage Cotton Company and the other cotton buyer. Mr. Williams told me I could pay the money from the sale of five of these bales of cotton to Cage-Sparks Hardware Company."

Mr. D. G. Cage testified:

"Bolin said he had the consent of Mr. B. O. Williams, the agent of plaintiff, to sell this cotton and turn the proceeds over to me. * * * I only received the proceeds from Bolin in payment of his account with Cage-Sparks Hardware Company, which I got with the consent of Mr. Williams, plaintiff's agent. * * * I authorized Mr. Bolin to sell the cotton, and so did Mr. Williams, and it was agreed that he was to turn over the proceeds of the sale to me for Cage-Sparks Hardware Company, who was his

creditor. I did not agree to hold the proceeds of this cotton subject to any settlement between plaintiffs and ourselves, but received it with the knowledge and consent of Mr. Williams, their agent."

[1, 2] The element of unlawful taking without the consent of appellant was set out in the petition, and, being as a tort or conversion so pleaded, he assumed the burden of proof that appellees illegally or wrongfully took possession of said property and committed the alleged tort. As the exercise of wrongful dominion over the property, the cotton or its proceeds, was made the real issue by the pleading, it was incumbent upon appellant to prove such want of consent or the illegal holding to establish conversion. The want of consent was not a defense, or to be established as a matter by way of confession and avoidance. So, under the pleadings, it was competent to show as a defense the consent by the unqualified delivery of the proceeds of the sale of the cotton to Cage, and likewise may be reasonably inferred from the testimony of Bolin and Williams that Ewing, the general manager for appellant, gave his consent and instructed Mr. Williams to deliver the proceeds to Mr. Cage, so that Cage-Sparks Hardware Company lawfully, with appellant's consent, received the proceeds of the said cotton, to wit, $199.-50, the balance having been paid to the landlord and cotton pickers.

This case presents no errors of law that require a reversal. It seems to have been fairly tried, and justice administered, and therefore the judgment of the trial court is affirmed.